Case number 24-5210 Timothy Davis v. Sig Sauer Inc. Oral argument is not to exceed 15 minutes per side. Mr. Haas, you may proceed for the appellant. Thank you. May it please the court and good morning, Your Honors. A gun should not go off unless the user wants it to. And a gun should not go off while in its holster when the user is performing routine, everyday activities like getting out of a car, bending down, or reaching for an object. Yet the Sig Sauer P320 does, time and time again, and did in this case due to its unique design defect and lack of external safety. In this case, Timothy Davis testified that he was at his home on January 23rd, 2021. He was getting out of his car. He had just spoken to his wife, went back to his truck, retrieved his Sig Sauer P320 from the center console, put it in its holster, felt it click, and felt the gun secure in its holster. When he stepped out of his car, the P320 discharged, striking him in his left calf. He did not touch the gun at any point. And in all of these cases, there is no dispute that the trigger cannot be pulled on its own. Therefore, by definition, if Mr. Davis did not touch the trigger, a foreign object must have contacted the trigger in order to actuate. Do you need to have an expert witness on causation in order to prevail? No, Your Honor, not in this case. And I understand this is our third argument, which is essentially in the alternative, even if Mr. Tertin and Dr. Vigilante are excluded, our position is that we do not need expert testimony on causation to prevail in this case. The district court excluded Mr. Tertin and Dr. Vigilante as to causation only and did not exclude their design defect opinions. There is significant circumstantial evidence in this case that a jury could rely upon to conclude that a foreign object contacted the trigger, which caused it to discharge and that a tab trigger... Can I ask about that? Isn't that generalizing a tough question? If you're talking about a tab trigger, isn't it simple for a jury to say that a tab trigger in effect with a smaller trigger within the bigger one would prevent firing if some motion already led to a trigger to pull here? In other words, how can you say that a tab trigger would have made any difference without... I looked at your expert reports and neither of them get to a comparison of a tab versus a striker trigger, which is what the SIG has. I agree, Your Honor, that Mr. Tertin's expert report, he makes an opinion that he clarifies in his deposition. And that opinion is opinion 14, which is that more likely than not, this incident was caused by the design defect in the SIG Sauer P320. And in his report, he explains what the design defect is, which is the lack of external safeties and the lack of a tab trigger. In his deposition, he specifies that the reason that a  by the gun. And he also makes a testify that the gun was in the holster at the time of discharge. And it is extraordinarily more difficult for a foreign object to get between the space, between the... I'm sorry to interrupt you, but doesn't that, doesn't that require testimony on causation at the very least to get by the motion for summary judgment? Well, Your Honor, if his causation opinion, specifically Tertin's causation opinion is admissible, which we allege that it is, then we don't need to rely upon that alternative argument. And if I could briefly go into why Mr. Tertin's causation opinion is admissible. Before you get to that, can you answer the first question? I'm sorry to do that to you, but is it necessary? In other words, do you need it to show that a tab trigger would have prevented this? Don't you need specialized knowledge to show that? And the answer, Your Honor, is no. And the reason the answer is no is because we can show a jury through demonstrative evidence the difference between a P320 trigger in this case and a tab trigger and insert a P320 in the exact holster versus a tab trigger. And the jury can make that determination themselves based upon the fact that ultimately they'll have to decide whether or not Mr. Davis is truthful and credible when he says that the gun is in the holster at the time of discharge. And if they find that he is, then they can make that determination based upon the circumstantial evidence in the case as to whether or not a tab trigger would have more likely than not prevented this incident. But as to Mr. Chertien, and I think it's more of an uphill battle with respect to Dr. Vigilante's causation opinion, but really the touchstone with respect to Mr. Chertien's causation opinion is whether or not it is pure speculation or whether or not there are sufficient foundations and it's supported by appropriate validation. And if I could briefly go into what Mr. Chertien did to support his causation opinion that the district court either disregarded or didn't give appropriate credence to. First, he confirmed that the P320 operates as a single action gun. He did so by performing testing. He drilled a hole in the channel of the slide. And with that, he confirmed that the striker is fully charged. The movement of the trigger does not in any way charge the striker or cock the gun. The gun is fully cocked when it is at rest and needs only, based upon his measurements of the subject gun, needs only four and a half pounds of trigger pull and 0.117 inches of trigger travel distance. The Glock, he compared that to the Glock, which is a four times longer trigger pull. That to Mr. Chertien indicated that the trigger was unreasonably dangerous because it needs such a short trigger travel distance to actuate. That was confirmed by his testing. He also performed demonstrative testing with videos that demonstrated the positive effect of a tab trigger in preventing unintended discharges from side trigger pulls. He's not making this up. This isn't speculation. He actually performed the testing and he did so by video showing that side trigger pulls, which is really the only area of the trigger that is exposed when the gun is fully holstered, are prevented by a tab trigger. He also compared the P320 against written materials from approximately 50 other guns and compared the P320 to competitor pistols, the Taurus, Springfield, Glock, Smith & Wesson, all striker fired polymer pistols, all of which have tab triggers. Didn't he say that he knew of no studies proving that a tab trigger prevents discharges? And I'm glad you brought that up, Your Honor. The fact that this case is being litigated against a gun manufacturer presents a unique situation. And the reason this is unique is because guns are exempt from the CPSC and the gun industry essentially regulates themselves. There are no studies. It's not that he didn't bother to look. It's that there are no studies that exist that compare unintended discharge rates, for example, of guns with tab triggers versus guns without. And the reason this is important is because in Jehan, which is a case, Jehan v. Equine Services, is a case in which the district court excluded two veterinarians from testifying as to the causation of a pony's death. And their testimony was similar to Mr. Chertien, that they had no opinion as to what the animal died of. In this case, Mr. Chertien testified that he has no opinion as to what actually contacted the trigger. In Jehan, this court determined that essentially the lack of record keeping, in that case it was medical records, can't be used to prejudice the party that doesn't have access to those records. In this case, there are no studies that he could have relied upon because guns are unique in the sense that they're not regulated by the CPSC and the gun industry essentially regulates themselves. And the best records of unintended discharge rates would be kept by the gun industry and not publicly available. Critically, what the district court failed to recognize is that there are other similar incident videos that Mr. Chertien relied upon that proved that Mr. Davis' version of events is plausible. There are six videos that Mr. Chertien viewed and relied upon that confirmed that the P320 can and will discharge in its holster without the user ever touching the gun. I have some of those videos available, if your honors care to view them. We submitted them with our papers. They are in the record for us. Thank you, Your Honor. But they show that this is not speculation. There is record evidence that our expert relied upon that proves the P320 can and will discharge in its holster without the user ever touching the gun. That confirms that Mr. Davis has a plausible version of events that has happened before and he alleges happened to him. Can I ask you quickly about the thumb safety? Even if he had a gun with a thumb safety, how do we know he would use it? Because typically when you're carrying concealed, you don't want to keep the safety on. So it seems to me the fact that he had it holstered means it's more likely than not he wouldn't have used it. And there's no testimony to the contrary. And I don't disagree with that, Your Honor. The most important element to this appeal is the fact that Mr. Troutine's causation opinion with respect to the tab trigger is admissible. Putting aside the thumb safety and as long as his causation opinion, which could have been narrowed or limited by the district court. Do you lose if we exclude it? What's that? Do you lose if we agree with the district court that it should have been excluded? Not the thumb safety. If you get that, I meant with regards to the tab trigger. I'm sorry I wasn't clear. May I answer the question? Yeah. Your Honor, if Mr. Troutine's causation opinion is excluded entirely based upon the prior arguments in the alternative, I concede that I think we have an uphill battle and we may, summary judgment may be appropriate. That being said, Mr. Troutine's opinion with respect to causation as to the tab trigger specifically is supported with substantial research and investigation, other similar incident videos and testing. And any issue with that opinion goes to the weight and not the admissibility. The case law is clear that shaky or any weakness in testimony is an issue for the chartered fact and the district court cannot pick and choose which expert they believe is more credible or more reliable. It's for the jury to decide. Thank you for your time. Thank you. Jenison. Thank you, Your Honors. May it please the court. Simply, a trial judge's decision regarding admissibility of expert evidence is not to be disturbed absent a clear abuse of discretion. And here there is no such clear abuse of discretion. And as Mr. Haas has... You agree he didn't rule on the design defect portion? I agree with that, Your Honor. Where in the opinion does he rule on it? Well, in the opinion, he does rule on... Give me one moment. I'll grab it for you. He does say that the experts cannot proceed on either defect or causation. However... I read it as him discussing causation throughout it, but maybe I missed it. Yes, so he does... I can grab that for you here. He does mostly talk about causation and that he cannot testify as to causation. However, he does... The judge does at some point also specifically say that he is excluding all of the opinions, not just on causation. That was confusing to me. Like at page 7 of the district judge's opinion, he says, as explained above, neither expert can be relied upon on causation. Both experts, therefore, must be precluded from testifying. So why were they entirely prohibited or were they entirely prohibited from testifying? Well, I think that they were entirely prohibited from testifying. And with respect to Mr. Vigilante, he testified in his deposition that he was really relying on Mr. Turteen for defect anyway. So Mr. Vigilante was really only looking at causation. He didn't inspect the pistol. He didn't inspect the holster. And he indicated that he was looking at really what caused the accident. So really it just comes down to whether Mr. Turteen should have been able to testify as to defect. But respectfully, it's not really a question that needs to be answered here because expert evidence is also needed for causation. And if Mr. Turteen cannot testify as to causation and the district court was correct in its exclusion of both experts on their causation opinions, then we never even need to reach that question as to whether he should have been permitted to testify on defect. So you say that expert testimony is required for causation. What do you rely on for that statement? Absolutely. So we did look at some various we did cite some various case law both in our brief here and what the expert or I'm sorry what the what the opinion by the court looked at as well. But for instance, the pride case that we cited talks about the need to have expert testimony on causation and in particular here as as I think that the panel has has correctly noted when Mr. Haas was talking. The issue here is is beyond the the province of a jury. So there was no work done to show the jury that or by any of the experts to show that a holstered pistol, even if you accept as you must for summary judgments, not necessarily to the expert analysis that that Davis had his pistol fully holstered. You have to show that a tab trigger or a manual safety would have prevented the accident in the holster and that simply has not been done. And that does need expert testimony. You need to show that even if you accept that a foreign object got into the holster, which does not. But even if you accept that, you have to show that a tab trigger, for instance, would have prevented that object. And there's actually plenty of evidence and we've cited some of it in the record that shows that that's not in fact the case. And, you know, when it comes to causation, neither expert actually really looked at the facts of the case. Mr. Tertain specifically said he doesn't care what the facts of any specific case are. So I guess I'm this seems to be an issue that several different district courts have looked at. And it seems to me that there's a divergence. Some of them are saying and it's with respect to Tertain, the same the same expert. Some of them are saying it's enough for him to say that there's a design defect and that a tab trigger would prevent this type of accident. And then to have the evidence of the individual whose gun goes off, explaining what actually happened in their view. And so I'm wondering why it isn't enough to have Tertain be able to talk about design defect and the tab trigger being able to prevent this type of accident, even if Tertain cannot say this is what caused Mr. Davis's accident. Well, in those other cases, the difference was that the courts found that he got over the threshold to show some sort of causation. So in the potato case, there was work done to by the experts testing done by the experts to put a pistol, a Glock in a holster and to put a P320 in a holster and to show whether one could pull the trigger and one couldn't. Now, we still disagree that that was with that with that decision. But that is a significant difference between the potato case in this case and in laying the court. And again, that's that that is subject to post-trial motions at the moment. But the court determined that there was some analysis as to the incident itself and the facts in the incident to allow Tertain to make that conclusion. So neither one of those courts were faced with a situation here where the experts said, I don't know what happened. I didn't try to look at what happened. I don't care about the facts of this incident. However, in the other cases in which and there are more cases, the majority of the courts and there's a more recent one that that was issued within the last two months out of out of the Northern District of New York, the Colwell versus six hour matter. But between Colwell versus six hour, Northrop versus six hour, Herman versus six hour and Slutowski versus six hour, you have four different courts, three federal, one state, which all held that where Mr. Tertain has not looked at the specific incidents that occurred where he has not cared about what happened here in this particular accident. He cannot testify to causation. There is just too great of an analytical gap to allow him to come in and tell the jury that the incident would have been prevented by a tab trigger when he has no idea what happened in this incident. It doesn't care. And and that's not an issue of a weakness in the expert's opinion. That is just not knowing that is based purely on speculation. So to allow an expert to come in and say, I don't care what happened in this incident, but I know that a tab trigger would have prevented this incident has no basis, has no reasonable basis and will simply confuse the jury. I'm I'm slightly confused why design wise, why a tab trigger wouldn't prevent this type of accident. Well, we've shown that it doesn't, first of all. And we've seen that there are actually video. There's videotaped evidence of glocks in holsters without a hand touching it that shows the pistol discharging. And our experts know that this person would investigate those incidents. So we know for a fact that they don't prevent it. But why isn't that an issue of comparing one expert versus another expert? Tertine says they do. Your expert says they don't. And it goes to the weight of that evidence that a jury should decide. Do tab triggers, given these two different experts talking about tab triggers, do tab triggers work? Well, the problem is that Tertine didn't do the work in this incident. So to allow him to come in and say that a tab trigger would have prevented this incident would allow him to tell the jury to speculate because he didn't do any work. But he isn't saying I know what caused this one. He's saying I know what tab triggers can do. And it's based on a more general studies that Tertine is reflecting. And your expert also has more general studies and says no tab triggers don't work. And you've tested some glock and seen that the glock goes off even if it has a tab trigger. So, you know, your expert may well be more believable and given more weight by a jury. But I still struggle to know why Tertine and Vigilante can't testify as to what kinds of tests they've run and what kind of studies they've evaluated and how they understand the mechanics to say a tab trigger would be something that would prevent an accident such as this. We're not saying this one. You're clearly not saying this one. If you can deal with my problem, that would be helpful. Yeah, I can deal with your problem, even if they could come in and say that. And we still submit that they can't based on qualifications. And the district court did not decide the issue of qualifications. But even if you accept that premise is true, that they could come in and talk about this generally, that does not solve the problem that was addressed by the court on the summary judgment motion, which is that the plaintiff cannot prove, the appellant cannot prove causation. And causation is an essential element to their claim. So let's just assume that Tertine and Vigilante could come in and say a tab trigger in general can prevent discharges. That does not get across that analytical gap to say it would have prevented this accident. And the appellant has to show that they have to do that to be able to get past summary judgment. They can't do that by expert testimony because as the district court correctly concluded, they did not look at the specific incidence of the case. And without looking at any of the incidents of the case, particularly Tertine, they cannot then tell the jury that this tab trigger would have prevented this specific incident. And without expert testimony, you cannot get across, the jury won't have evidence to rely on that. And keep in mind that it's not just an issue of whether there's a tab trigger. The alleged defect here is not simply it should have had a tab trigger. Do you agree if there was a report that said tab triggers prevent accidental discharges from clothing or side swipes or all of these, that would have been sufficient? No. Why not? Because they would have had to show the basis for that and they haven't looked at the basis for that. Now if they came to that conclusion and they showed evidence either through testing or through peer-reviewed studies or even if not peer-reviewed studies from empirical evidence, then I would agree with you. If they showed a basis for that opinion, then I absolutely agree with you that they should be able to get to the jury on that. But first of all, they wouldn't be able to show that basis because it's not in fact the case. But it's also not present here. They didn't do that here. And so the district court properly exercised its gatekeeping function in excluding the evidence and the testimony in this case. But to get back to the point, it's not just a matter of should a tab trigger be on this, but the experts and the appellant's theory here is that it's because of the gun's design. Internal workings. You heard Mr. Haas say their expert cut open the pistol, looked internally, and that's part of the basis of their opinion. So if you exclude the expert's testimony on causation, you have to also exclude, you know, you also have to uphold the summary judgment motion because you need the expert testimony on causation here to show that it was the fact that it was a single-action pistol, as the plaintiffs allege, and the lack of external safeties that caused this accident. And you need to have an expert come in and tell the jury why that's the case. And here the plaintiffs and the appellant failed to procure an expert who would render those opinions to be able to give that to the jury. So without those causation opinions by an expert, you simply cannot get to a jury. So even if you accept and say Tartine should have been able to come in and talk about the design defect, he still shouldn't have been able to testify about causation when he didn't look at and didn't care about what happened in this accident. And if there's not an expert to tell the jury that, based on those technical, the technical expertise, that that would have prevented this accident, you can't get past summary judgment either. Isn't there some overlap, though, between the design defect and causation here? Because if the design defect is that this... I almost can't disentangle them, frankly, because the design defect seems to be the single-action trigger combined with no external safety. And the external safety thing, I think Mr. Hauser said, we're not even really so much focusing on that. But if they can testify concerning what the design defect is, then the natural next step is, so this design defect, what happens with this design defect? And if what happens with this design defect is that there is a discharge that is not purposeful by the person, then I don't understand how you would disentangle those two things. And that's very easy to answer. It's because both of the plaintiff's experts have agreed, both of the plaintiff's experts have agreed that it's more likely that an unintentional discharge is going to happen with a TAD trigger. So I know that seems like an inverse way of saying the same thing to me. Well, except that it's not an inverse way of saying the same thing, because they do say that they don't prevent all incidents. And if they say and agree that they don't prevent all incidents, then by default, they have to look at what happened in this incident to be able to say it's more likely than not that it wouldn't have been caused here. And by neglecting entirely to look at the specific accident here, they have not been able to then say there's too great of that analytical gap. There's nothing on which they base an opinion that here that incident would not have been prevented. So if they agree, if they agree that TAD triggers do not prevent all unintentional discharges, and they don't look at the facts of this discharge, how can they possibly say with any degree of scientific certainty or any reliability that a TAD trigger would have prevented this incident? They can't. Your time has expired. Any judge has another question? Thank you very much for your argument. Thank you. There's a little rebuttal time left. Mr. Haas. Thank you, Your Honor. May I briefly share my screen? I'm not sure if that's allowed. If not, that's okay. You're taking your time up, however you wish. Mr. Haas, it seems to me it comes down on causation to specificity versus generality. In other words, it seems to me what you are arguing about is that from a general perspective, maybe a TAD trigger is safer than a striker trigger. But in this specific case, what evidence is there that a TAD trigger would have prevented this shooting? And that's what your friend on the other side keeps pointing to. So what evidence in the record is there? If I could go through it specifically what Mr. Tertine relied upon. First, there are six videos that show this phenomenon happening. But that doesn't go to specificity, right? What happened here? In other words, the fact that because that happens with Glocks, too, as your friend points out. Your Honor, she may make that representation, but she's found one video where it happens with a Glock. We know of over 150 incidents involving the P320, 100 of which Mr. Tertine relied upon. This is an incident that is unique to the P320. And so the question is, why is this happening with the P320 and not other guns? And what Mr. Tertine did was identify the differences between the P320 that make it uniquely susceptible to unintended discharge, which is a trigger travel distance that is one-fourth the length of a Glock. The fact that it's a single action, so when you pull the trigger, it is much more susceptible to unintended discharge because the trigger weight is less. Specifically with this case, the testimony that Mr. Davis' P320 was holstered, that fact is critical. In all of these cases, Sig Sauer alleges that the trigger doesn't pull itself and that somebody must have contacted the trigger, and they always blame the user. And in this case, their expert said he must have been holstering the gun and his finger pulled the trigger inadvertently. Isn't that supported by the police and EMT testimony too? So it's hard to say that he's speculating on that. It's not. One, that conflict needs to be resolved by the fact finder. Two, the shell casing did not eject. And that is evidence that the gun was holstered because there's friction that would have prevented the slide from coming all the way back. And in all of these cases, the failure of the casing to eject is further evidence that the gun was fully holstered at the time of discharge. With that, the only thing that could have caused this discharge is either my client's finger or a foreign object. That is for the fact finder to determine. We say it's a foreign object. And if the gun is fully holstered, a tab trigger would have prevented a foreign object from reaching in, going totally across the trigger, and pulling it square flush from the back. That is basically Mr. Chertien's opinion. And that opinion is supported by all the work he did in this case, by the testing, by the videos, and supported by the other similar incident videos and other incidents he relied upon to show the P-320 is uniquely susceptible to unintended discharge and cause this incident. And thank you for letting me go over my time. Thank you both for your argument, and the case will be submitted.